IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEVEN RAY WILKERSON | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-15-3387 |
| WARDEN DEBORAH RICHARDSON, et al. | * | |
| Defendants | * | |

***

## MEMORANDUM

Defendants filed a motion to dismiss or for summary judgment on behalf of Warden Richardson (ECF 14) and a motion to dismiss on behalf of Officer "Nakita" (ECF 19) in response to the above-entitled civil rights complaint. Plaintiff was advised of his right to file an opposition response to the motions (ECF 15 and 20) and of the consequences of failing to do so, but has not opposed the motions. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, defendants' motions shall be granted and judgment entered in their favor.

### Plaintiff's Allegations

At all times relevant to the complaint,[1] plaintiff was incarcerated at the Baltimore County Detention Center. He alleges that on October 12, 2015, at "12:15 at night" he attempted to climb into the bunk in his cell and fell because there were no handicap rails on the bunk. ECF 1 at p. 4. After he fell, plaintiff states that his cellmate beat on the door to get the attention of an officer. After the officer saw what had occurred, he called the nurse, leaving plaintiff on the floor waiting for assistance. *Id.*

---

[1] Subsequent to the filing of this complaint, plaintiff was moved to the Baltimore Central Booking and Intake Center. ECF 12.

Plaintiff alleges that it took the nurse "at least 20 minutes" to get to the cell and when she arrived she asked what happened. *Id.* at p. 5. When plaintiff's cellmate explained that he had fallen, the nurse stated she would be right back because she had to get the doctor. Plaintiff claims it took at least an hour before the nurse and doctor came back and that he laid in his own urine during that time. *Id.*

Doctor Noel Stevens,[2] the nurse, and Officer Nakita (later identified as Officer McKeiver) returned to plaintiff's cell and "tried to yank [plaintiff] up off the floor," but stopped when plaintiff screamed in pain. *Id.* Plaintiff told them he had broken his neck in a previous accident, that he had steel in his neck, and that they were hurting him. He claims they "dropped" him back down on the floor and that Dr. Stevens began to pull on his foot and stab plaintiff on the bottom of his feet. Plaintiff claims they then picked him up again and "tossed" him onto his bunk. Although Officer Nakita said he would bring plaintiff a dry jumpsuit, he never did so. *Id.*

Following the incident, plaintiff claims he developed a "clicking" in his neck. *Id.* On October 19, 2015, plaintiff received an x-ray of his neck and his requests for treatment of the pain were denied. Plaintiff alleges he told staff his neck and back were hurting, that he suffers from chronic pain, and that his pain is a 10 on a scale of one to ten. *Id.*

Plaintiff supports his complaint with a declaration under oath signed by his cellmate, Kevin Peters, which tracks the same factual account of his claim as presented in the complaint. ECF 1 at pp. 6 – 7. As relief, plaintiff seeks monetary damages of one-million dollars and an order requiring the detention center to be made handicap accessible. *Id.* at p. 4.

After filing the complaint with this court, plaintiff filed a pleading entitled "motion for assistance for proper medical treatment and retaliation." ECF 9. In that motion plaintiff claimed

---

[2] Stevens was never served with the complaint. For reasons apparent herein, the complaint against her shall be dismissed without further service attempts.

2

that correctional officers were retaliating against him by writing false incident reports and that the medical department was telling him his wheelchair would be taken away.

Plaintiff states that on December 16, 2015, he awoke at 1:30 a.m. and told his cellmates he had no feeling in his legs. When a correctional officer came to the cell for count, plaintiff repeated the complaint to him and the officer told him he would contact medical staff. Plaintiff claims he did not hear back from them and at 5:00 a.m. he still had no feeling in his legs. He claims he had to receive assistance from his two cellmates to get out of his bunk and into his wheelchair. He could not stand to urinate so he did so in a seated position from the wheelchair. ECF 9 at pp. 1 – 2.

On December 17, 2015, plaintiff was seen by Dr. Kahlid Elbedawi, who told plaintiff he would send him to an outside hospital where he would be seen by a neurosurgeon and receive an MRI of his spine. However, plaintiff claims that by December 27, 2015, he was not sent out to the hospital, nor was he seen by a neurosurgeon. ECF 9 at p. 2.

Plaintiff further claims that Dr. Elbedawi advised that plaintiff's medication would be adjusted because the non-narcotic pain relievers he was receiving were not effective and were hard on his liver and kidneys. He states he is in constant pain which becomes unbearable at times. He adds that mail he receives from this court is opened outside of his presence and that he is threatened by correctional officers. ECF 9 at p. 2.

### Defendants' response

Defendants state that plaintiff entered the detention center on October 8, 2015, at which time he identified several medical problems which included chronic back, neck, and knee pain. He further advised that he had been prescribed Percocet and oxycodone, narcotic pain medication, for treatment of his chronic pain. ECF 14-4. When medical staff attempted to

perform a full intake physical exam of plaintiff, he refused after he was told he would not be receiving narcotic pain medication. *Id.* Plaintiff was then placed on a detoxification protocol to address withdrawal symptoms that might arise due to his removal from narcotic medication and he was prescribed non-narcotic medication to address the pain issues. *Id.*

Plaintiff was assigned to the medical ward in a bottom bunk with an alert that he was a fall risk. On October 16, 2015, plaintiff was seen by medical staff in response to a sick call request he submitted seeking a change or increase in his pain medication. He was prescribed additional medication as a result. During plaintiff's confinement at the detention center, defendants state he was seen frequently by medical staff and his medication was adjusted to address his pain.

Defendant Richardson asserts that plaintiff never informed her that he was not receiving appropriate medical care. ECF 14-3 at p. 2. She explains that plaintiff was at the detention center from October 8, 2015 through January 28, 2016, and a search of her file containing correspondence from inmates revealed no written communication from plaintiff. *Id.*

## Standard of Review

### Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Motion to Dismiss

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

5

The Supreme Court of the United States explained a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994)) (once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint').

### Analysis

The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Due process rights of a pretrial detainee are at least as great

as the Eighth Amendment protections available to the convicted prisoner." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992), (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires

knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The complaint is devoid of any allegation against Officer McKeiver, improperly named Nakita in the complaint, that he was deliberately indifferent to plaintiff's serious medical need. When he was alerted to plaintiff's fall, he called a nurse for medical assistance and then assisted in moving plaintiff from the floor to his bunk. There is no evidence of a callous disregard for plaintiff's condition. The complaint as to McKeiver must be dismissed.

The claim as to Richardson also does not state a constitutional claim. Even assuming Richardson was aware that plaintiff was dissatisfied with the level of pain relief provided by the medication prescribed, a disagreement with medical treatment given is not an adequate basis for a constitutional claim absent extraordinary circumstances. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir.1970)). Not only did plaintiff receive appropriate medical care for his pain, the additional precaution of a detox protocol was put into place when staff were made aware that plaintiff had been on narcotic

medications prior to his incarceration. There is nothing to suggest in the uncontroverted evidence in this case that plaintiff's condition was disregarded or otherwise not appropriately addressed. Richardson is entitled to summary judgment in her favor. For that same reason, plaintiff's claim against Noel Stevens shall be dismissed.

Plaintiff's motion raising a claim of retaliation based on unspecified incident reports and statements allegedly made regarding confiscation of his wheelchair (ECF 9) shall be denied. First, any injunctive relief sought is now moot given plaintiff left the detention center three weeks after the motion was filed. Secondly, bald allegations of retaliation such as those raised in plaintiff's motion do not state a claim. *See Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983)) (a complaint alleging retaliation in wholly conclusory terms may be dismissed on the pleading alone).

A separate order follows.

_June 24, 2016_
Date

_J. Frederick Motz_
J. Frederick Motz
United States District Judge

BY _____ DEPUTY
CLERK'S OFFICE
AT BALTIMORE
2016 JUN 24 PH 1:59
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
FILED